IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

AMANDA SHOEMAKER,

        Plaintiff,

v.  CIVIL ACTION NO. 3:16-2244

ALCON LABORATORIES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**[1]

On May 15, 2017, the Court held oral argument on Defendant's Motion for Summary Judgment, ECF No. 32, and Plaintiff's Motion for Partial Summary Judgment, ECF No. 34. By Memorandum Opinion and Order dated May 18, 2017, the Court summarily granted Defendant's Motion for Summary Judgment and denied as moot Plaintiff's Motion for Partial Summary Judgment. ECF No. 44. The Court reserved its reasoning for its decision for a later date. The following Memorandum sets out more fully the Court's bases for granting Defendant's motion.

**I.    Background**

Plaintiff Amanda Shoemaker brought suit against her employer Alcon Laboratories ("Alcon") for disability discrimination and violations of the Family Medical Leave Act ("FMLA").[2] Plaintiff has been unable to present to the Court any evidence supporting her discrimination and Family Medical Leave Act claims.

---

[1] Though not entered in the record until October 17, 2017, Court **DIRECTS** the Clerk to enter this Memorandum Opinion and Order nunc pro tunc to reflect an original entry date of May 31, 2017.

[2] Shoemaker also brought a negligent infliction of emotional distress claim, but conceded

Shoemaker began working at Alcon as a temporary employee employed by Manpower, a temporary staffing agency. Def.'s Mot. for Summ. J., Scola Dep. 25, Ex. A, ECF No. 32-1. Shoemaker worked at Alcon through Manpower for about one year. *Id.* Alcon hired Shoemaker directly on November 22, 2014. *Id.* Over the course of the following six months, Shoemaker made five quality control errors or mistakes. Def.'s Mot. for Summ. J., Shoemaker Dep. 55, 60–61, 65–67, Ex. C, ECF No. 32-3. On May 22, 2015, she was placed on performance improvement plan. Def.'s Mot. for Summ. J., Performance Improvement Plan (PIP) Form, Ex. D, ECF No. 32-4.   The plan required Shoemaker to undergo additional training, avoid additional quality control errors, and sustain a certain level of performance for the duration of the plan. *Id.* Were Shoemaker to fail to comply with the plan, Alcon informed her that she was subject to termination. Shoemaker Dep. 72–73. Shoemaker successfully completed the plan on August 29, 2015. Shoemaker Dep. 73. Alcon issued Shoemaker a plan closeout letter that notified Shoemaker that she was expected to continue to sustain the level of performance demanded under the plan and was subject to termination should she return to making quality control errors. Shoemaker Dep. 73–74.

In early 2015, Shoemaker was transferred from working on the wet aberrometer to the cosmetics department. Pl.'s Mot. for Partial Summ. J., Shoemaker Dep. 46, Ex. 1, ECF No. 34-1. Her job in the cosmetics department required her to use a microscope for long periods. Shoemaker Dep. 46. Sometime after assuming her new position, but not later than October 2015, Shoemaker began to develop headaches accompanied by dizziness. Shoemaker Dep. 46. In early October 2015, Shoemaker claims she fainted at work while using the microscope. Shoemaker Dep. 138. It is not at all clear that Shoemaker fainted in the common meaning of the word. Rather, an eyewitness explained that she became disoriented and may have been about to faint. *See*

---

at oral argument that she could not support the claim and withdrew it.

Shoemaker Dep. 140–41; Pl.'s Mot. for Partial Summ. J. Pelino Dep. 11–14 ("I don't remember her passing out. But she was unstable several times."). Whether Shoemaker actually fainted or almost fainted is immaterial. When this episode was relayed to her immediate supervisors, she was transferred back to working on the aberrometer. Shoemaker Dep. 139. Once moved, Shoemaker's headaches and dizziness appeared to abate and did not interfere with her ability to work at the aberrometer station. Shoemaker Dep. 51.

On October 22, 2015, while working on the aberrometer, Shoemaker incorrectly processed five "blue special" lots. Def.'s Mot. for Summ. J., Dehaven Dep. 42–43, Ex. E, ECF No. 32-5; Shoemaker Dep. 81. "Blue special" lots required Shoemaker to use a certain stainless steel piece of equipment instead of the ordinary aluminum equipment. Shoemaker Dep. 81, 83. Alcon was using the special lots to test manufacturing techniques in an effort to meet standards imposed by the Japanese market, an important market for Alcon. Dehaven Dep. 36. The "blue special" lots were marked with special instruction sheets with blue dots on each page to alert the technician. Shoemaker Dep. 78–79. Shoemaker was aware of the importance of the "blue special" lots, knew to look for them during her shift, and knew generally that they required a different process explained in the special instruction sheets attached to the lot. Shoemaker Dep. 78–79. Shoemaker's supervisors raised concerns about the improperly processed lots but were met with a nonchalant rebuff of their concerns. Def.'s Mot. for Summ. J. Email from Matt Benson to Sheila Scola, Ex. G, ECF No. 32-7. Alcon decided to review Shoemaker's employment at this time. *Id.*

On October 28, 2015, she visited a medical doctor complaining of, among other things, blackouts and dizziness. Pl.'s Mot. for Partial Summ. J. Ex. 16, ECF No. 34-16. She reported to the doctor that the first incident occurred approximately two weeks prior (likely referring to the episode at the cosmetics station). Pl.'s Mot. for Partial Summ. J. Notes of Regina Guzzo M.D., Ex.

16. The doctor wrote a note to Alcon suggesting that Shoemaker be moved to a different station. Pl.'s Mot. for Partial Summ. J. Letter from Regina Guzzo M.D., Ex. 16. Shoemaker had already been transferred to the wet aberrometer station. Shoemaker Dep. 74.

On November 15, 2015, Shoemaker called off work. Shoemaker Dep. 107. Shoemaker had already exhausted her paid time off. Shoemaker Dep. 111–12; Def.'s Mot. for Summ. J. Email From Matt Benson to Lori Brooks (Nov. 16, 2015), Ex. I, ECF No. 32-9. Shoemaker's immediate supervisor Matt Benson contacted human resources to discuss Shoemaker's absence. Ex. I. Human resources explained that if she did not have a valid medical reason for her absence, she would be reviewed for termination. *Id.* Shoemaker cannot recall why she was absent on November 15 and did not tender an excuse to Alcon when she returned to work. Shoemaker Dep. 107. Shoemaker was terminated a short time later.

## II.     Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof of an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to

establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.     Discussion

Shoemaker's first cause of action alleges that Alcon dismissed her because of a disability in violation of the West Virginia Human Rights Act. Compl. ¶¶ 16–23, Notice of Removal, Ex. A, ECF No. 1-1; W. Va. Code § 5-11-9. Shoemaker claims that her headaches and dizziness are a disability or, in the alternative, Alcon perceived her as disabled and therefore she belonged to a protected class. *Id.*

Claims of employment discrimination are subject to a burden-shifting scheme that first requires a plaintiff to make a prima facie case of discrimination. *Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 429 (W. Va. 1986). If plaintiff can make that showing, the burden shifts to the employer to assert some nondiscriminatory reason for the adverse decision. *Id.* at 430. "The reason need not be a particularly good one. It need not be one which the judge or jury would have acted upon. The reason can be any other reason except that the plaintiff was a member of a protected class." *Id.* The burden then shifts back to the employee to rebut the employer's proffered justification by demonstrating that it is a mere pretext for discrimination. *Id.*

Shoemaker has not presented evidence to make out a prima facie showing of discrimination. To make such a showing "the plaintiff must make some showing of fact" that would support each of the following three elements: (1) the plaintiff is a member of a protected class; (2) the employer made an adverse decision concerning the plaintiff; and (3) but for the plaintiff's protected status, the adverse decision would not have been made. *Id.* at Syl. Pt. 2; *Burke-Parsons-Bowlby Corp. v. Rice*, 736 S.E.2d 338, 344 (W. Va. 2012).

The first two elements are easily met in many instances. Shoemaker arguably has met her initial burden with respect to these elements. It is the third that proves much harder to demonstrate and where Shoemaker's claim fatally founders. To be sure, "there will probably be very little direct proof [of discrimination] available. Direct proof, however, is not required." *Conaway*, S.E.2d at 429. Still, the plaintiff must present *some* evidence that would link the adverse decision to his or her protected status to give rise to an inference that discriminatory intent was at the heart of the employer's decision. *Id.* Indirect evidence such as unequal treatment between members of the protected class and others or the elimination of legitimate reasons can serve as the bases for this inference. *Id.* Obviously, an admission from the employer would similarly make the connection. *Id.*

Shoemaker has presented no evidence whatsoever of Alcon's discriminatory intent. In fact, the evidence presented to the Court gives rise to the opposite inference. When Shoemaker complained that her job in the cosmetics department caused her to have headaches, she was transferred to a job she did in the past, for which she received additional training relatively recently, and which did not cause her headaches or dizziness. Had Alcon been motivated by discriminatory intent, one would think it would have dismissed her when she complained of headaches and dizziness. Instead, it accommodated her health issues almost immediately. After this accommodation Shoemaker made a costly mistake[3] at her position and exceeded her paid time off

---

[3] Shoemaker argues that moving her to the wet aberrometer station disregarded her disability because Alcon failed in its duty to ensure that Shoemaker was able to perform the duties at the wet aberrometer. Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. 9, ECF No. 37. This argument has no basis in law or fact. It is not a violation of any anti-discrimination laws to put an employee in a position he or she is not trained to perform and for which a disability does not preclude that performance. It might be a bad business practice, but the Court cannot find, and Shoemaker does not supply, some positive law that could have been violated. In addition, Shoemaker was trained to perform the aberrometer duties. She worked at that station in the past and had received additional training during her performance improvement plan, which post-dated

without any excuse. There is no evidence, indirect or otherwise, to support an inference that Shoemaker was fired because she was disabled or perceived as disabled.

Shoemaker's second and third causes of action face similar evidentiary challenges. Shoemaker alleges that Alcon interfered with her FMLA rights by not informing her she was eligible for FMLA leave to care for her headaches before dismissing her. She further alleges Alcon retaliated against her for exercising her FMLA rights. Both claims fail because Shoemaker has not been able to produce evidence that she ever requested FMLA leave to address her medical condition.

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that; (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).

Shoemaker can point to no evidence, including her own deposition testimony, demonstrating that she ever requested leave of any kind to care for her medical condition. Shoemaker admitted during her deposition that she never requested FMLA leave, and no doctor ever recommended that she take leave to care for her condition. Shoemaker Dep. 114. "The FMLA does not require an employer to be clairvoyant" by anticipating an employee's need for leave. *Brnneman v. MedCentral Health Sys.*, 366 F.3d 412, 428 (6th Cir. 2004). It also does not require an employee to "use any magic words" to notify the employer. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d. Cir. 2007). It does, however, require an employee to convey enough information to her employer such that the information relayed "was reasonably adequate to apprise

---

her original time at the aberrometer station.

-7-

the employer of the employee's request to take leave for a serious health condition that rendered [her] unable to perform [her] job." *Brenneman*, 366 F.3d at 428 (citing *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *Cain v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 725 (6th Cir. 2003)).

As a matter of law, the information known to Alcon about Shoemaker's condition was insufficient to qualify as notice that she required leave to treat her condition. Shoemaker maintains that Alcon knew of her headaches and dizziness and this was enough to provide notice that she needed FMLA leave. Knowledge of a serious medical condition is insufficient notice that an employee requires *leave* to treat that condition. *Brenneman*, 366 F.3d at 429. Obviously not every employee with a serious medical condition needs leave to address it. When the need arises, however, the FMLA expects an employee to request it in a manner that intelligibly relays that need to the employer. Saying nothing, taking unexplained and unexcused leave, and expecting Alcon approach Shoemaker with options for FMLA leave when she never requested it, cannot in any way be construed as notice that Shoemaker intended to exercise her FMLA rights.

Even at this stage in the litigation Shoemaker has not asserted that she ever needed or intended to take leave to address her condition. Shoemaker Dep. 114. The medical records that she submitted as evidence of ongoing treatment for her condition show that she had various acute medical issues (a cold, an injured toe, dry eyes, etc.) unrelated to her complaints from work. *See* Pl.'s Mot. for Partial Summ J. Ex. 16. Her medical records reveal only three appointments related to the symptoms caused by her work in the cosmetics department. *Id.* (appointment with Dr. Guzzo on October 28, 2015); Pl.'s Mot. for Partial Summ. J. Ex. 3, ECF No. 34-3 (appointments with Ironton Vision Center on November 4, 2015 & June 8, 2016). Only two of them occurred while she was employed by Alcon and neither occurred on days when Shoemaker missed work. *Id.* What

is more, none of her appointments, even if they were to treat the condition she claims has made her disabled, occurred during her working hours. Shoemaker Dep. 96. Shoemaker worked third shift (night shift), but saw doctors during regular business hours. Shoemaker Dep. 96. Shoemaker has presented no evidence that she ever missed work due to care for her condition and testified that she cannot recall a time when she missed work to treat her condition. Shoemaker Dep. 96.

Without some affirmative action by Shoemaker to alert Alcon that she believed she needed leave to treat her condition, Alcon had no way to know that she needed leave and could not have violated her rights to take leave.

Shoemaker's FMLA retaliation claim fails for the same reason. Shoemaker did not engage in any protected activity for which Alcon could retaliate. "An FMLA plaintiff claiming retaliation must first make a prima facie showing that he engaged in protected activity . . . ." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). Shoemaker simply did not engage in any protected activity. Her absence on November 15 without excuse cannot be considered "protected activity" where Shoemaker herself cannot recall why she missed work and does not recall ever missing work due to her medical condition. Nor can Alcon's knowledge that Shoemaker suffered from headaches be construed as "protected activity" where Shoemaker never asked to take leave of any kind to treat her condition.

### IV. Conclusion

For the foregoing reasons Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 31, 2017

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE